**Venita C. FRYAR**

**v.**

**Jack F. KEMP, Secretary of the Department of Housing and Urban Development of the United States, and the Housing Authority of the City of Pineville.**

**Civ. A. No. 90–1787.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

July 22, 1991.

David P. Spence, Provosty, Sadler & Delaunay, Alexandria, La., for plaintiff.

John A. Broadwell, Asst. U.S. Atty., Shreveport, La., for defendant U.S. Dept. of Housing & Urban Dev.

Wilbert J. Saucier, Jr., Office of Wilbert J. Saucier, Jr., Pineville, La., for defendant Pineville Housing Authority.

## RULING

LITTLE, District Judge.

Plaintiff Venita Fryar has instituted an action for declaratory judgment against the Housing Authority of the City of Pineville (PHA) and Jack Kemp, the United States Secretary of the Department of Housing and Urban Development (HUD). Plaintiff's former husband had leased two apartment buildings to the PHA, which in turn subleased them to low income tenants; HUD provided subsidy payments under an Annual Contributions Contract (ACC) to the PHA to enable it to make the lease payments to the Fryars. The lease term as to one building expired on 1 March 1991. As to the other, the expiration date is 31 August 1991.

On 30 June 1990 PHA notified plaintiff, the current owner of the apartment blocks, that it would no longer lease either building and would not pay any rent after 31 July 1990. PHA decided to terminate the rental relationship because the units fell below HUD guidelines.

This court now considers HUD's motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or, in the alternative, to transfer to a proper forum. Plaintiff's complaint invoked 28 U.S.C. § 2201 as her basis for federal jurisdiction. Defendant argues, however, that the Tucker Act vests jurisdiction in this case exclusively with the Claims Court.

■ The Tucker Act provides that: the district courts shall not have jurisdiction of any civil case or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

28 U.S.C. § 1346(a)(2). Thus, an action rests exclusively within the jurisdiction of the Claims Court if "(1) the action is against the United States; (2) the action is founded upon the Constitution, federal statute, executive regulation, or government contract; and (3) the action seeks monetary relief in excess of $10,000." *Amoco Production Co. v. Hodel,* 815 F.2d 352, 359 (5th Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988); *Portsmouth Redevelopment & Housing Authority v. Pierce,* 706 F.2d 471, 473 (4th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1984). If a case falls under the provisions of the Tucker Act, "the Claims court is the sole forum for the adjudication of such a claim, even though the claim would otherwise fall within the coverage of some other statute conferring jurisdiction on the district court." *Amoco Production,* 815 F.2d at 358; *Graham v. Henegar,* 640 F.2d 732, 734–35 (5th Cir.1981).

■ Although plaintiff does not argue that her suit is not over $10,000, the court notes *sua sponte* that plaintiff's case is a declaratory judgment action; plaintiff has not asked for any monetary damages from defendants. Neither party has briefed the issue of whether this fails to satisfy the Tucker Act's first requirement for transfer to the Claims Court. This court notes that:

> The pleadings do not, on their face, ask for a money judgment, and thus, might prompt the conclusion that this case *clearly* falls outside the Tucker Act since [plaintiff] does not directly or expressly ask for money from the government. However, in the 'murky' area of Tucker Act jurisprudence, one of the few clearly established principles is that the substance of the pleadings must prevail over their form.

*Amoco Production,* 815 F.2d at 361 (emphasis in original) (citation omitted).

To determine whether this action involves $10,000 or more "the fundamental inquiry being performed is a search for the 'essence' of the claim;" the court will at-

tempt to "focus on the type of relief that will result from the action in determining whether the suit falls within the Tucker Act." *Id.* at 361–62. Although plaintiff's suit is styled as a declaratory judgment action, a successful result in this tribunal would also enable plaintiff to go to the Claims Court and seek the rental payments that HUD has not made since the suit was instituted. This court therefore agrees with the Fourth Circuit's *Portsmouth* decision, which explicitly held that a declaratory judgment action seeking to validate ACCs between a housing unit operator and HUD satisfied the Tucker Act's $10,000 requirement. *Portsmouth,* 706 F.2d at 474.

Next, plaintiff argues that her action is not against the United States. This issue, in turn, rests upon whether " 'the judgment sought would expend itself on the public treasury or domain....' " *Amoco Production,* 815 F.2d at 359 (quoting *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947)); *Portsmouth,* 706 F.2d at 473. In *Industrial Indemnity, Inc. v. Landrieu,* 615 F.2d 644 (5th Cir. 1980), the Fifth Circuit decided that a suit against the Secretary of HUD was not a suit against the United States. *Id.* at 647. Although plaintiff argues strenuously that *Industrial Indemnity* should allow her to proceed in this forum, the facts in *Industrial Indemnity* render it inapposite to the case at bar. *Industrial Indemnity* involved a suit for payment of construction work on a housing project. An adverse judgment in *Industrial Indemnity* would have been paid out of the General Insurance Fund, which is a separate fund set up by 12 U.S.C. § 1735(c) under the control of the Secretary of HUD. *Id.* at 646.

In the case at bar, however, plaintiff seeks monies due to her under an ACC. An adverse judgment against HUD would not be paid out of any special insurance fund but instead out of the public treasury. *See* 42 U.S.C. § 1437c(c)(7)(B) (providing that payments on contributions contracts are to be appropriated from the public treasury); *see also Portsmouth,* 706 F.2d at 473 ("There is no 'separate fund' for the payment of operating subsidies within HUD's exclusive control"); *Carlyle Gardens Co. v. Delaware State Housing Authority,* 659 F.Supp. 1300, 1306 (D.Del. 1987) (same). Plaintiff's suit is thus against the United States and jurisdiction falls exclusively to the Claims Court. *Portsmouth,* 706 F.2d at 473; *Carlyle Gardens,* 659 F.Supp. at 1307; *see also 1610 Corp. v. Kemp,* 753 F.Supp. 1026, 1029 (D.Mass.1991) (dispute over rental payments between housing project owner and HUD falls within sole jurisdiction of Claims Court).[1]

Accordingly, the court GRANTS defendant's motion and ORDERS this case transferred to the Claims Court pursuant to 28 U.S.C. § 1631.[2]

---

1. Aside from noting that *Industrial Indemnity* involved facts that can distinguish it from lawsuits involving ACCs, the *Carlyle Gardens* decision criticized the reasoning of the Fifth Circuit in that case. This court does not adopt or follow that portion of *Carlyle Gardens.*

2. Although the court can either transfer plaintiff's case or dismiss it, it orders transferral in the interest of justice and to promote judicial economy.