**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1726
_____

DESMOND CONBOY; BRENDAN GILSENAN,

Appellants

v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION;
CBE GROUP; FIRST NATIONAL BANK, d/b/a Metro
Bank; SEDA COG
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-18-cv-00224)
District Judge: Honorable Malachy E. Mannion
_____

Submitted on January 21, 2021

Before: HARDIMAN, ROTH, *Circuit Judges*, and
PRATTER, *District Judge*.[*]


(Filed: March 19, 2021)


Joshua L. Thomas
225 Wilmington-West Chester Pike
Suite 200
Chadds Ford, PA 19317

*Counsel for Appellants*

David J. Freed
Samuel S. Dalke
Office of United States Attorney
Middle District of Pennsylvania
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

*Counsel for Appellee United States Small Business
Administration*

Robbie Malone
Eugene X. Martin, IV
Malone Frost Martin

---

[*] The Honorable Gene E.K. Pratter, United States District
Judge for the Eastern District of Pennsylvania, sitting by
designation.

2

8750 North Central Expressway
NorthPark Central, Suite 1850
Dallas, TX 75231

Justin M. Tuskan
Metz Lewis Brodman Must O'Keefe
535 Smithfield Street
Suite 800
Pittsburgh, PA 15222

*Counsel for Appellee CBE Group*

Jeffrey E. Havran
Margolis Edelstein
220 Penn Avenue
Suite 305
Scranton, PA 18503

*Counsel for Appellee Seda Cog*

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

Almost two decades ago, this Court declared that "[a]n appeal is not just the procedural next step in every lawsuit," and the decision to challenge "an order of the District Court is not a matter to be taken lightly." *Beam v. Bauer*, 383 F.3d 106, 108 (3d Cir. 2004). Today we reemphasize these truths. In this appeal, counsel for Appellants Desmond Conboy and Brendan

Gilsenan filed a brief that was essentially a copy of the one he filed in the District Court. Because the substance of this appeal is as frivolous as its form, we will affirm the District Court's summary judgment and grant Appellee CBE Group's motion for damages under Rule 38 of the Federal Rules of Appellate Procedure.

I

The case arises out of an unpaid debt. Appellants Conboy and Gilsenan, with help from a $594,000 loan from the United States Small Business Administration, bought and renovated a commercial property in Harrisburg, Pennsylvania that became Ceoltas Irish Pub. Conboy and Gilsenan executed a note, mortgage, and unconditional guarantees that they would repay the loan. The guarantees provided that federal law would control the enforcement of the note and guarantees and that Conboy and Gilsenan may not invoke any state or local law to deny their obligation to the SBA.

Conboy and Gilsenan defaulted on the loan and sold the property. The SBA allowed the sale to proceed but declined to release Appellants from their loan obligations.

After repeated attempts to collect the debt failed, the SBA assigned the debt to CBE Group for collection. Rather than pay the debt, Conboy and Gilsenan sued the SBA, the United States Treasury Department, First National Bank, Seda Cog (an agency that facilitated the original loan transaction), and CBE in the Court of Common Pleas of Monroe County, Pennsylvania. The SBA removed the case to the United States District Court for the Middle District of Pennsylvania. The Treasury Department and First National Bank were dismissed from the litigation with Conboy and Gilsenan's consent.

4

In an amended complaint, Conboy and Gilsenan alleged federal claims for violating the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq.*, and the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, *et seq.* They also alleged state law claims for violating the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 PA. CONS. STAT. §§ 201-1, *et seq.*, breach of contract, unjust enrichment, and defamation.

After discovery, Defendants moved for summary judgment, and CBE sought sanctions under Rules 11 and 37 of the Federal Rules of Civil Procedure. CBE argued that Conboy and Gilsenan brought frivolous claims and disobeyed discovery orders. Conboy and Gilsenan filed an untimely brief opposing both sanctions and summary judgment, which did not include the separate responsive statement of material facts required by Local Rule 56.1. Under the Local Rule, that failure to provide a responsive statement conceded the material facts set forth in the moving parties' statements.

The District Court granted summary judgment and denied the sanctions motions. It held, among other things: (1) that the FDCPA and UTPCPL claims failed because neither statute applies to commercial debts; (2) Conboy and Gilsenan identified no material facts in the record supporting their claims against Seda Cog, their unjust enrichment claim against CBE, or their FCRA claim against the SBA; (3) the contract claim against the SBA failed because Conboy and Gilsenan "admitted"—by not filing a counterstatement of material facts—that the unconditional loan guarantees foreclosed bringing a state law claim to deny their loan obligations; (4) they admitted they had no contract with CBE; and (5) sovereign immunity barred the unjust enrichment and defamation claims against the SBA. The District Court also

5

held that "no extraordinary circumstances" justified Rule 11 sanctions, and that Rule 37 sanctions were unnecessary because Conboy and Gilsenan's conduct during discovery did not "significantly prejudice[] CBE." *Conboy v. U.S. Small Bus. Admin.*, 2020 WL 1244352, at *7 (M.D. Pa. Mar. 16, 2020). Conboy and Gilsenan appealed the summary judgment.

II[1]

Conboy and Gilsenan's opening brief begins with a proper introductory sentence arguing that the District Court should not have granted summary judgment. Opening Br. at 1. But it quickly goes awry in the next paragraph: "The district court has subject-matter jurisdiction over this case . . . ." *Id*. One could readily assume that the sentence included a typographical error, using "has" instead of "had." But just two sentences later, the brief declares: "Venue is appropriately laid in the District Court of New Jersey . . . ." *Id*. This second use of the present tense, denoting the wrong trial court, presages what comes after, which belies the notion of an honest mistake.

In the first sentence of his legal argument, counsel describes the summary judgment standard. *Id*. at 6. Two pages later, he argues that "summary judgment should be denied . . . ." *Id*. at 8. In the next section of his argument, counsel again writes as if the case remains in the District Court, claiming "there is no reason to grant summary judgment based on jurisdictional reasons for either party." *Id*. at 13. Apart from

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1367, and 15 U.S.C. § 1692k(d). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's summary judgment de novo. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015).

6

these unusual (and inappropriate) references to the case pending in the District Court, counsel's fifteen pages of "argument" do not mention how the District Court erred. This left us with the suspicion that something was amiss with counsel's brief.

Unfortunately, our suspicions were confirmed. Counsel for Conboy and Gilsenan simply took the summary judgment section of his District Court brief and copied and pasted it into his appellate brief, with minor changes such as swapping "Defendant" for "Appellee." *Compare* Appendix A hereto, *with* Appendix B. This is not proper appellate advocacy.

Unsurprisingly, the lack of appellate argument reflects the correctness of the District Court's summary judgment. The Court properly granted judgment on the UTPCPL and FDCPA claims because those statutes apply to consumer debts, not commercial ones like the debt at issue. *In re Smith*, 866 F.2d 576, 583 (3d Cir. 1989) (73 PA. CONS. STAT. § 201-9.2, the UTPCPL section on private actions, applies "only [to] those persons who purchase or lease goods or services primarily for consumer use rather than for commercial use"); *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980) (the FDCPA "was intended to apply only to debts contracted by consumers for personal, family or household purposes" (citation and internal quotation marks omitted)). Conboy and Gilsenan did not identify evidence supporting their claims against Seda Cog, their unjust enrichment claim against CBE, or their FCRA claim against the SBA. Nor did they point to evidence of any contract with CBE. In addition, the unconditional loan guarantees preempted the contract claim against the SBA, and the defamation claim against the SBA failed because of sovereign immunity. *See Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir. 2000) ("[D]efamation suits against the United

7

States are prohibited."). Finally, although we have not explicitly addressed whether the United States has waived sovereign immunity as to unjust enrichment claims, we need not resolve that issue here because Conboy and Gilsenan cited no record evidence creating a factual dispute material to their unjust enrichment claim against the SBA. *See Kabakjian v. United States*, 267 F.3d 208, 213 (3d Cir. 2001) ("We may affirm a judgment on any ground apparent from the record.").

Regrettably, counsel's response to CBE's motion for damages under Rule 38 of the Federal Rules of Appellate Procedure is yet another copy-and-paste job. Counsel copied Conboy and Gilsenan's previous opposition to sanctions in the District Court under *Civil* Rules 11 and 37—with only insignificant alterations and additions. *Compare* Appendix C hereto, *with* Appendix A at 10–12. Contrary to counsel's assertion, the Rule 38 motion did not duplicate the sanctions motions, and we will grant it even though the District Court's denial of sanctions was well within its discretion.

Rule 38 authorizes compensatory damages—not sanctions or punishment—to reimburse appellees who must defend judgments against frivolous appeals, "and to preserve the appellate court calendar for cases worthy of consideration." *Kerchner v. Obama*, 612 F.3d 204, 209 (3d Cir. 2010) (quoting *Huck v. Dawson*, 106 F.3d 45, 52 (3d Cir. 1997)); *Beam*, 383 F.3d at 108. We "employ[] an objective standard to determine whether or not an appeal is frivolous" on the merits, without considering appellants' "good or bad faith." *Kerchner*, 612 F.3d at 209 (quoting *Hilmon Co. (V.I.) v. Hyatt Int'l*, 899 F.2d 250, 253 (3d Cir. 1990)). "Here, despite many cues from . . . the District Court that [their] cause was wholly meritless," *see Beam*, 383 F.3d at 109, Conboy and Gilsenan's counsel filed a copy-and-paste appeal without bothering to explain what the

District Court did wrong. It is hard to imagine a clearer case for Rule 38 damages.

We may impose these damages on clients, but here we will place responsibility for payment on the lawyer. *See id.* "[A]ttorneys have an affirmative obligation to research the law and to determine if a claim on appeal is utterly without merit and may be deemed frivolous." *Hilmon*, 899 F.2d at 254. "[B]ecause it would be unfair to charge a damage award against [parties who have] relied upon [their] counsel's expertise in deciding whether to appeal, we have routinely imposed Rule 38 damages upon counsel when a frivolous appeal stems from counsel's professional error." *Beam*, 383 F.3d at 109. In this case, Conboy and Gilsenan's attorney is to blame for recycling meritless arguments without engaging the District Court's analysis.

\*   \*   \*

It's not easy to become a lawyer. The practice of law is challenging, and even the best lawyers make mistakes from time to time. So we err on the side of leniency toward the bar in close cases. But the copy-and-paste jobs before us reflect a dereliction of duty, not an honest mistake. We will therefore affirm the District Court's summary judgment and grant CBE's motion for Rule 38 sanctions after counsel for CBE files an appropriate fee petition and counsel for Appellants has a chance to respond.

9

# APPENDIX A

**An unaltered copy of Appellants' District Court brief opposing summary judgment and sanctions**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DESMOND CONBOY and BRENDAN
GILSENAN,

        Plaintiffs,

        v.

CBE Group, Seda Cog, First National Bank
s/b/m Metro Bank and U.S. Small Business
Administration
        Defendant.

CIVIL ACTION NO.: 3:18-CV-00224

*Civil Action*

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS U.S. SMALL BUSINESS ADMINISTRATION'S, CBE GROUP AND SEDA COG MOTIONS FOR SUMMARY JUDGMENT AND SANCTIONS

---

## STATEMENT OF FACTS

Plaintiffs sold the property, known as 310 North Second Street, Harrisburg PA 18360 by on February 17, 2016. (See Exhibit A – HUD1)[1]. As part of that sale, there were two loans paid off to First National Bank S/B/M Metro Bank, the first mortgage of $432,113.49 and the second mortgage for $45,340.43. Defendant SBA was responsible for backing the second mortgage that was paid off the $45,340.43. Defendant SBA signed off and agreed to permit this sale to take place. As such, there was an alleged deficiency to the SBA of $276,315.61. This information was, in fact, sent for the first time to Plaintiffs on September 3, 2016, which was 6 months and 18 days after the sale. (See Exhibit B). This was beyond the 6 month cutoff for a deficiency judgment on a mortgage to be pursued. After that time, Defendant SBA transferred the debt

---

[1] All exhibits incorporated by reference from prior pleading and complaint for sake of brevity.

improperly to Defendant CBE Group. As of October 19, 2017, Defendant CBE has not only made many collection attempts in writing, but added on interested and fees so the current debt balance is now allegedly at $374,258.64. (see Exhibit C). At no time was a lawsuit brought or a judgment received during the 6 month period after the sale of the property took place. Defendant CBE has been informed that their collection efforts are not legal, yet they have continued to pursue those efforts despite this knowledge. Further, on or around February 9, 2018, Defendant SBA reported an outstanding balance to the Credit Bureaus for Mr. Conboy. This report stated that the account was allegedly opened on April 15, 2005, the "high balance" was for $594,000, there was a balance of 271,799 and the last time Mr. Conboy allegedly made a payment was October 11, 2017. Further, it had a status of "charged off". This report was done solely to damage Mr. Conboy's credit and in retaliation for the filing of this suit, as there had never been a report previously. There was no reasonable or legal reason for this report, and it was done for completely improper purposes, with the express intent to damage Mr. Conboy, his ability to receive credit and to defame him for anyone else who would potentially attempt to lend him money and see such a derogatory report.

Further, there is no question that Seda Cog had an interest in this matter. (See Exhibit D – modification). Additionally, they were communicating with Plaintiff as late as 2015. Some of the people who communicated with Plaintiff from Seda Cog were X and B. There is no question they still had an interest in this matter and were actively attempting to collect on this debt. As such, they belong as a party to this matter as well.

## LEGAL ARGUMENT

### I. BOTH DEFENDANTS' MOTIONS FAIL  TO SHOW THEY ARE ENTITLED TO SUMMARY JUDGMENT

2

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). Furthermore, in deciding the merits of a party's motion for summary judgment, the court's

3

role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

In this case, summary judgment should be denied because Defendants not only rely on insufficient evidence, but outdated case law, inapplicable arguments and their evidence is so contradictory, that Defendants essentially defeat themselves with their own evidence. To further these proofs though, Defendants now present their own evidence as well, to show substantial material facts now in issue.

As stated in the relatively recent case, *Tepper v Amos*, No. 17-2851 3rd Cir., Aug. 7, 2018, The Court discussed the "default" test and ultimately choose to say that, based on the Supreme court case of *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), it would no longer apply. Instead, the court chose to follow the plain text of the statute: "an entity whose principal purpose of business is the collection of any debts is a debt collector regardless whether the entity owns the debts it collects. *Id.*

Further, the FDCPA is a "remedial legislation" aimed, as already noted, "to eliminate abusive debt collection practices by debt collectors." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting § 1692(e); *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013)). Importantly, it applies only to "debt collectors," *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000), defined as any person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition); or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects for another," or "regularly collects," definition).1 § 1692a(6). Further, and most importantly, **"The FDCPA is a strict liability statute to the extent**

4

**that it imposes liability without proof of an intentional violation."** *Allen ex. rel, Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

As stated previously, the Supreme Court, in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), has recently repealed the "default" test. Debtors claimed that Santander Bank, which had purchased their loans already in default and attempted to collect on them, met the second definition of "debt collector," i.e., one who "regularly collects or attempts to collect . . . debts owed or due . . . another." Id. at 1721 (quoting § 1692a(6)). They asserted as well that the Bank met the "principal purpose" definition, but the Court did not review that claim because it was not litigated in the District Court. Id. The Supreme Court began "with a careful examination of the statutory text," in particular the definition's limitation to debts "owed . . . another." Id. It reasoned that "by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." Id. This language does not suggest that "whether the owner originated the debt or came by it only through later purchase" determines if it is a debt collector. Id. "All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" Id. Hence the Bank, which collected debts for its own account, did not meet the "regularly collects for another" definition. Id. at 1721–22. The Court also addressed the suggestion that everyone who attempts to collect debt is either a "debt collector" or a "creditor" with respect to a particular debt, but cannot be both. Id. "[S]potting (without granting) th[at] premise," it stated that a company such as the Bank, which collects on debt it purchased for its own account, "would hardly seem to be barred from qualifying as a creditor under the statute's plain terms." Id. But excluded from the definition of "creditor" are those who acquire a debt after

5

default when the debt is assigned or transferred "solely for the purpose of facilitating collection of such debt for another." Id. (quoting § 1692a(4)).

## II. DEFENDANT SBA's MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises in part out of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. and Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681, et seq. *See Alfaro V. Wells Fargo N.A., d/b/a America's Servicing Company*, Civil Action No. 16-7950 (DNJ 2017). While it is accurate that these are not the only claims, they are the Federal claims in this matter and, it is bad faith for Defendant to only remove the action and the turn around and claim the court lacks jurisdiction and also to move for summary judgment on similar grounds. *See Generally Rivas v. Bowling Green Associates, L.P.* No. 13-cv-7812, , at *4-5 (S.D.N.Y. July 24, 2014)). As such, for Defendant to remove to Federal Court, for the sole purpose of attempting dismissal or procuring improper summary judgment, would be tantamount to bad faith. Further, there is no question that this court can hear the related state claims as well based on Supplemental jurisdiction. Supplemental jurisdiction is the authority of United States federal courts to hear additional claims substantially related to the original claim even though the court would lack the subject-matter jurisdiction to hear the additional claims independently. *28 U.S.C. § 1367.* As such, there is no reason to grant summary judgment based on jurisdictional reasons for either party.

As stated by Defendant, it is axiomatic that the United States and its agencies and officers are immune from suit unless they have consented to be sued. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). *In re Epps*, 110 B.R. 691 (E.D. Pa. 1990) (sovereign immunity waived under National Housing Act authorizing HUD to "sue and be

sued" in carrying out certain provisions of the Act). Such "sue and be sued" statutes waive sovereign immunity only of particular agencies, not the United States generally. *See Lomas & Nettleton Co. v. Pierce*, 636 F.2d 971, 972-73 (5th Cir. 1981); *Indus. Indem., Inc. v. Landrieu*, 615 F.2d 644, 646 (5th Cir. 1980). If the judgment sought by the plaintiff would "expend itself on the public Treasury," the suit is in reality against the United States regardless of whether the complaint names only Federal agencies or officials. *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947)); *see also FHA V. Burr*, 309 U.S. 242, 250-51 (1940) (garnishment action against Federal agency permitted only to the extent it had funds outside the Treasury); *Presidential Gardens Assocs. v. United States ex rel. Sec'y of HUD*, 175 F.3d 132, 141 (2d Cir. 1999) (waiver of HUD's immunity limited to funds under control of HUD, does not reach general Treasury funds). Finally, in the case of "sue-and-be-sued" agencies, one can argue that, although such governmental units may have independent litigating authority, the Bankruptcy Code, § 106, places limits upon the jurisdiction of the bankruptcy courts over any governmental unit. *Cf. Aetna Cas. & Sur. Co. v. United States*, 655 F.2d 1047 (Ct. Cl. 1981) (although HUD might be suable in other courts upon certain causes of action, Tucker Act places limits upon Court of Claims' jurisdiction over them).

In this case, by transferring the interest in the underlying debt for the sole purpose of attempting to collect on that debt, that was an affirmative action that effectively waived sovereign immunity. Even though it is admitted that the SBA transferred the debt, they were still responsible for the apparent "deficiency" and the initiation of the transfer. As such, even the SBA was not the primary party to begin the debt collection process, it was still their actions that permitted it to proceed. As such, they can be sued for their actions that left to the collection

7

action, even if they were not directly the party doing so. Specifically, the SBA **can** be held accountable for their actions under the FCRA.

In *Kent v. TransUnion*, plaintiff Rowdy Kent sued multiple consumer reporting agencies and the United States Defense Finance and Accounting Services for alleged violations of the Fair Credit Reporting Act. See Kent v. Trans Union, LLC, docket number 16-322 (2017) DFAS moved to dismiss Kent's claims, arguing that it possesses sovereign immunity from claims under the FCRA. On August 25, 2017 the District Court for the Northern District of Texas rejected DFAS's contention, finding that Congress had waived sovereign immunity for claims under the FCRA. As such, because the actions taken by the SBA led to damage to Plaintiff Conboy's credit, that is enough to keep them in the case for the FCRA violation and related stated claims as well as not granting summary judgment.

Further, there is a relevant exception to the sovereign immunity waiver. If the plaintiff seeks less than $10,000 in damages, the federal district courts have concurrent jurisdiction with the United States Court of Federal Claims based on 28 U.S.C. § 1346, also known as the "Little Tucker Act". The current version gives concurrent jurisdiction to the Court of Federal Claims and the District Courts "for the recovery of … any sum alleged to have been excessive or in any manner wrongfully collected … and for claims below $10,000" See 28 U.S.C. § 1346(a)(2). For this case, Plaintiffs are willing to limit their claim against the SBA to below $10,000.00 for the damage they caused through the transfer they effectuated as well as the damage to credit, particularly if the SBA agrees to repair said damage. As such, even if the FDCPA cannot be brought against Defendant SBA, it can still proceed against the other Defendants and as such, summary judgment should be granted to the claim fully. As such, the SBA essentially admitted and agreed that the other claims, as long as they are each limited to $10,000.00 can proceed. The

8

only other "argument" is a failure to exhaust "administrative remedies" but in none of the pleadings is it stated what remedies should have been pursued before filing this suit. As such, this argument should be considered a red herring at most, and can be denied.

### III. DEFENDANT SED COGA AND CBE GROUP'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

Seda Cog and CBE Group rely primarily on the assertion they "transferred their rights away" in 2006. This simply is not accurate, as a modification was signed with them in 2013 (see Exhibit D) and they were contacting Plaintiff as late as 2015. As such, their implicit statute of limitations argument against the claims against them must be denied.

Several of the above arguments can be applied to Seda Cog as well and are incorporated by reference. As in the *Alfaro* case, the Plaintiffs are "*not inviting the district court to review and reject any state judgment under this cause of action.*" *Alfaro V. Wells Fargo N.A., d/b/a America's Servicing Company*, Civil Action No. 16-7950 (DNJ 2017). The reason for this is because the actionable offenses that the statute would have applied occurred, as Defendants admitted well within the two years statute. The actions that occurred by Defendant previously clearly show the scheme at issue here. Even though they try to claim they had no interest since 2006, that is simply not accurate. As such, they must remain as Defendants in this action for all of the damages caused to Plaintiffs,

As to the breach of contract, unjust enrichment and the other state claims, the statute that applies is the a four year statute, rather than a two year statue, as per either 42 Pa. Consol. Stat. § 5525(7), (8); 42 Pa. Consol. Stat. § 5529 for written contracts or  42 Pa. Consol. Stat. § 5525(3) for oral contracts. These relate to the modification that was offered and which payments were made on it.

9

Additionally, there should be no question that Defendant Seda Cog can be considered a Debt Collector. Defendant squarely falls into the definition of a "debt collector" because they certainly qualify as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). Further, a party is also a "debt collector" if the obligation is already in default when it is assigned. <u>Evankavitch v. Green Tree Servicing, LLC</u>, 793 F.3d 355, 358, fn. 2 (3d Cir. 2015). In this case, by either standard, Defendant would be considered a debt collector, as through their actions there is now an attempt to collect the underlying debt in question. Finally whether or not a party was a "debt collector" is a material fact for a fact finder to decide. A mere allegation a part was not is insufficient and since Defendants attached no actual evidence to this matter, the argument should be deemed moot.

## IV.  <u>THE MOTIONS FOR SANCTIONS SHOULD BE DENIED</u>

Defendants' motions utterly lacks merit and was filed for an improper purpose, and its denial should be compounded by a corresponding levy of sanctions and costs against Defendants. Defendants have used both the threat and the filing of the motion, not as a means to filter a frivolous claim but as a bullying tactic intended to intimidate Plaintiffs into withdrawing legitimate claims This misuse of Rule 11 is in and of itself sanctionable. Indeed, the Advisory Committee notes point out that Rule 11 should not be used "to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." *See Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida*, 827 F.2d 1454, 1458 (11th Cir. 1987) (affirming the denial

10

of sanctions where the issues were fairly debatable and not easily resolved, and there was no clear binding precedent).

The standard under Rule 11 is "stringent" because sanctions "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes, 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). While the focus of Rule 11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988) ("Rather than misusing scarce resources, [the] timely filing and disposition of Rule 11 motions should conserve judicial energies.").

Defendants' motions fail not only for its lack of merit, but it also violates the ethical underpinnings of Rule 11. Rule 11 imposes a duty on the party seeking sanctions to be circumspect in pursuing such a drastic remedy and to not to use the device for an improper purpose lest it may discourage expansion of the law through creative legal theories. *See Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010) (Rule 11 "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.")(citations omitted). Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. *See, Park v. Seoul Broad. Sys. Co.*, 2008 U.S. Dist. LEXIS 17277, at *1 (S.D.N.Y. Mar. 6, 2008). Whether a claim can survive on the merits is wholly distinct from whether that claim is frivolous. *See Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007)("'When divining the point at which an argument turns from merely

11

losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'")

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court deny Defendants' motions in full.

 _/s/ Joshua Thomas, Esq._
Joshua Thomas, Esq.
*Attorneys for Plaintiffs*

Dated: September 30, 2019

# APPENDIX B

**A redline copy of Appellants' opening appellate brief compared to their District Court brief**

No. 20-1726

## IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

DESMOND CONBOY and

BRENDAN GILSENAN

v.

CBE GROUP, SEDA COG, FIRST NATIONAL BANK S/B/M METRO BANK AND U.S. SMALL BUSINESS ADMINISTRATION

DESMOND CONBOY and
BRENDAN GILSENAN,

*Appellant*

On Appeal from the U.S. District Court
for the MIDDLE DISTRICT OF PENNSYLVANIA
Civil Action No. 3:18-CV-00224

### APPELLANT'S OPENING BRIEF AND APPENDIX

Attorney for Appellants

Joshua L. Thomas & Associates

Joshua Thomas Esq.

Supreme Court ID No. 312476

225 Wilmington-West Chester Pike Suite 200

Chadds Ford, PA 19317

Phone: (215) 806-1733

Fax: (888) 314-8910

Email: JoshuaLThomas@gmail.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................i

TABLE OF AUTHORITIES ..................................iiii

I.    INTRODUCTION ........................................1

II.   STATEMENT OF JURISDICTION ...........................1

III.  STATEMENT OF ISSUES .................................2

IV.   STATEMENT OF THE RELATED CASES ......................2

V.    STATEMENT OF THE CASE AND FACTS .....................2

VI.   STANDARD OF REVIEW ..................................5

VII.  LEGAL ARGUMENT ......................................6

    1. Both Appellees' Motions Failed To Show They Were

      Entitled To Summary Judgment…………………………………… 6

    2. Appellee Sba's Motion For Summary Judgment Should
      Have Been Be Denied……….........................12

    3. Appellee Sed Coga And Cbe Group's Motion For

      Summary Judgment Should Have Been Denied ……....18

VIII. CONCLUSION .........................................21

IX.   CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ..........22

X.    CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS AND
CERTIFICATE OF PERFORMANCE OF VIRUS CHECK ..................23

XI.   CERTIFICATE OF SERVICE .............................24

# TABLE OF AUTHORITIES

## Federal and State Codes

15 U.S.C. § 1681 ........................................10

15 U.S.C. § 1692(e) .....................................8

15 U.S.C. § 1692a ...................................8, 9, 14

28 U.S.C. § 1331 ........................................10

28 U.S.C. § 1367 .......................................10

42 Pa. Consol. Stat. § 5525 ........................13

42 Pa. Consol. Stat. § 5529 ........................13

Fed. R. Civ. P. 56(a)...................................6

## Court Cases

*Alfaro V. Wells Fargo N.A., d/b/a America's Servicing Company,* Civil Action No. 16-7950 (DNJ 2017) ............................8, 13

*Allen ex. rel, Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) .... 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)................ 6

*Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013) ....................................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) .................... 7

*Cf. Aetna Cas. & Sur. Co. v. United States*, 655 F.2d 1047 (Ct. Cl. 1981) .......... 11

*Dugan v. Rank, 372 U.S. 609, 620 (1963)* ........................ 11

*Evankavitch v. Green Tree Servicing, LLC,* 793 F.3d 355, 358, fn. 2 (3d Cir. 2015). ......................... 14

*FDIC v. Meyer, 510 U.S. 471, 475 (1994)* ....................... 10

*FHA V. Burr*, 309 U.S. 242, 250-51 (1940) ..................... 11

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ....... 7, 9

*In re Epps, 110 B.R. 691 (E.D. Pa. 1990)* ...................... 10

*Indus. Indem., Inc. v. Landrieu, 615 F.2d 644, 646 (5th Cir. 1980)* ......... 11

*Lomas & Nettleton Co. v. Pierce*, <u>636 F.2d 971, 972-73</u> *(5th Cir. 1981)* . . 10, 11

*Kaymark v. Bank of Am., N.A.*, <u>783 F.3d 168, 174</u> (3d Cir. 2015) . . . . . . . . . . 8

*Kent v. Trans Union*, LLC, docket number 16-322 (2017) . . . . . . . . . . . . . . . . . 12

*Marino v. Indus. Crating Co.*, <u>358 F.3d 241, 247</u> (3d Cir. 2004) . . . . . . . . . . . 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, <u>475 U.S. 574, 586</u> (1986) . . . 7


*Presidential Gardens Assocs. v. United States ex rel. Sec'y of HUD*, <u>175 F.3d 132,</u>
    <u>141 (2d Cir. 1999)</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pollice v. Nat'l Tax Funding, L.P.*, <u>225 F.3d 379, 403</u> (3d Cir. 2000) . . . . . . . . . . 8

*Rivas v. Bowling Green Associates, L.P.* No. 13-cv-7812, , at \*4-5 (S.D.N.Y. July 24,
    2014)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Shields v. Zuccarini*, <u>254 F.3d 476, 481</u> (3d Cir. 2001) . . . . . . . . . . . . . . . . . . 7

*Tepper v Amos*, No. 17-2851 3rd Cir., Aug. 7, 2018 . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Mitchell,* <u>445 U.S. 535, 538</u> *(1980)* . . . . . . . . . . . . . . . . . . . . 10

[Appellate brief's front matter replaced District Court brief's caption.]

iv

## I.    INTRODUCTION

The primary issue at the heart of this case is, that summary judgment was improperly granted, and the parties should have been permitted to have this heard on the merits, as it should have been.

## II.    STATEMENT OF JURISDICTION

The district court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1332.  This Court has supplemental jurisdiction over Appellees and the state law based claims pursuant to 28 U.S. Code § 1367. Venue is appropriately laid in the District Court of New Jersey pursuant to 28 USC §1391(b)(2) as the events giving rise to the claim occurred substantially within the State of New Jersey. This Court has jurisdiction over this appeal under 28 U.S. Code §1291 (Final decisions of district courts).

## III.    STATEMENT OF ISSUES

1. Whether Appellees' Motions Failed To Show They Were Entitled To Summary Judgment?

1

Suggested Answer: YES.

2. Whether Appellee Sba's Motion For Summary Judgment Should Have Been Be Denied

Suggested Answer: YES.

3. Whether Appellee Sed Coga And Cbe Group's Motion For Summary Judgment Should Have Been Denied?

Suggested Answer: YES.

## IV.    STATEMENT OF THE RELATED CASES

There are no other related cases at this time.

## V.    STATEMENT OF THE CASE AND FACTS

Appellants sold the property, known as 310 North ~~Plaintiffs~~ Second Street, Harrisburg PA 18360 by on February 17, 2016. (See APPENDIX A1 – HUD1)[1]. As part of that sale, ~~Exhibit A~~ there were two loans paid off to First National Bank S/B/M Metro Bank, the first mortgage of $432,113.49 and the second mortgage for $45,340.43. Appellee SBA was ~~Defendant~~ responsible for backing the second mortgage that was paid off the $45,340.43. Appellee SBA signed off and ~~Defendant~~ agreed to permit this sale to take place.    As such, there was an alleged deficiency to the SBA of

[1] ~~All exhibits incorporated by reference from prior pleading and complaint for sake of brevity.~~

2

$276,315.61. This information was, in fact, sent for the first time to Appellants ~~Plaintiffs~~ on September 3, 2016, which was 6 months and 18 days after the sale. (See APPENDIX A1 ~~Exhibit B~~). This was beyond the 6 month cutoff for a deficiency judgment on a mortgage to be pursued. After that time, Appellee ~~Defendant~~ SBA transferred the debt improperly to Appellee ~~Defendant~~ CBE Group. As of October 19, 2017, Appellee ~~Defendant~~ CBE has not only made many collection attempts in writing, but added on interested and fees so the current debt balance is now allegedly at $374,258.64. (see APPENDIX A1 ~~Exhibit C~~). At no time was a lawsuit brought or a judgment received during the 6 month period after the sale of the property took place. Appellee ~~Defendant~~ CBE has been informed that their collection efforts are not legal, yet they have continued to pursue those efforts despite this knowledge. Further, on or around February 9, 2018, Appellee ~~Defendant~~ SBA reported an outstanding balance to the Credit Bureaus for Mr. Conboy. This report stated that the account was allegedly opened on April 15, 2005, the "high balance" was for $594,000, there was a balance of

3

271,799 and the last time Mr. Conboy allegedly made a payment was October 11, 2017. Further, it had a status of "charged off". This report was done solely to damage Mr. Conboy's credit and in retaliation for the filing of this suit, as there had never been a report previously. There was no reasonable or legal reason for this report, and it was done for completely improper purposes, with the express intent to damage Mr. Conboy, his ability to receive credit and to defame him for anyone else who would potentially attempt to lend him money and see such a derogatory report.

Further, there is no question that Seda Cog had an interest in this matter. (See APPENDIX A1 – Exhibit D modification). Additionally, they were communicating with Appellant Plaintiff as late as 2015. Some of the people who communicated with Appellant Plaintiff from Seda Cog were X and B. There is no question they still had an interest in this matter and were actively attempting to collect on this debt. As such, they belong as a party to this matter as well.

4

## VI.    STANDARD OF REVIEW

This Court reviews *de novo* a district court's ruling on an order to dismiss for failure to state a claim. *McTernan v. City of York*, 577 F.3d 521, 526, 530-31 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ). "*To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'*"    *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "*Factual allegations must be enough to raise a right to relief above the speculative level*," *Twombly*, 550 U.S. at 555, and a complaint must plead specific facts that raise "*more than a sheer possibility that a Appellee has acted unlawfully*," *Iqbal*, 556 U.S. at 678. A court need not, and may not, accept legal conclusions packaged as factual allegations. *See, e.g., Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56.

5

## VII.    LEGAL ARGUMENT

### a. BOTH ~~DEFENDANTS'~~ APPELLEES' MOTIONS ~~FAIL~~ FAILED TO SHOW THEY ~~ARE~~ WERE ENTITLED TO SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

6

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the

evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

In this case, summary judgment should be denied because Appellees ~~Defendants~~ not only rely on insufficient evidence, but outdated case law, inapplicable arguments and their evidence is so contradictory, that Appellees ~~Defendants~~ essentially defeat themselves with their own evidence. To further these proofs though, Appellees ~~Defendants~~ now present their own evidence as well, to show substantial material facts now in issue.

As stated in the relatively recent case, *Tepper v Amos*, No. 17-2851 3rd Cir., Aug. 7, 2018, The Court discussed the "default" test and ultimately choose to say that, based on the Supreme court case of *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), it would no longer apply. Instead, the court chose to follow the plain text of the statute: "an entity whose principal purpose of business is the collection of any debts is a

8

debt collector regardless whether the entity owns the debts it collects. *Id.*

Further, the FDCPA is a "remedial legislation" aimed, as already noted, "to eliminate abusive debt collection practices by debt collectors." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting § 1692(e); *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013)). Importantly, it applies only to "debt collectors," *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000), defined as any person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" (the "principal purpose" definition); or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects for another," or "regularly collects," definition).1 § 1692a(6). Further, and most importantly, **"The FDCPA is a strict liability statute to the extent**

9

**that it imposes liability without proof of an intentional violation."** *Allen ex. rel, Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

As stated previously, the Supreme Court, in *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), has recently repealed the "default" test. Debtors claimed that Santander Bank, which had purchased their loans already in default and attempted to collect on them, met the second definition of "debt collector," i.e., one who "regularly collects or attempts to collect . . . . debts owed or due . . . another." Id. at 1721 (quoting § 1692a(6)). They asserted as well that the Bank met the "principal purpose" definition, but the Court did not review that claim because it was not litigated in the District Court. Id. The Supreme Court began "with a careful examination of the statutory text," in particular the definition's limitation to debts "owed . . . another." Id. It reasoned that "by its plain terms this language seems to focus our attention on third party collection agents working for a debt

owner—not on a debt owner seeking to collect debts for itself." Id. This language does not suggest that "whether the owner originated the debt or came by it only through later purchase" determines if it is a debt collector. Id. "All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" Id. Hence the Bank, which collected debts for its own account, did not meet the "regularly collects for another" definition. Id. at 1721–22. The Court also addressed the suggestion that everyone who attempts to collect debt is either a "debt collector" or a "creditor" with respect to a particular debt, but cannot be both. Id. "[S]potting (without granting) th[at] premise," it stated that a company such as the Bank, which collects on debt it purchased for its own account, "would hardly seem to be barred from qualifying as a creditor under the statute's plain terms." Id. But excluded from the definition of "creditor" are those who acquire a debt after default when the debt is assigned or transferred "solely for the

11

purpose of facilitating collection of such debt for another." Id. (quoting § 1692a(4)).

### b. ~~APPELLEE~~ SBA's MOTION FOR SUMMARY JUDGMENT ~~II. DEFENDANT~~ SHOULD HAVE BEEN BE DENIED ~~MUST~~

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises in part out of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. and Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681, et seq. *See Alfaro V. Wells Fargo N.A., d/b/a America's Servicing Company*, Civil Action No. 16-7950 (DNJ 2017). While it is accurate that these are not the only claims, they are the Federal claims in this matter and, it is bad faith for Appellee ~~Defendant~~ to only remove the action and the turn around and claim the court lacks jurisdiction and also to move for summary judgment on similar grounds. *See Generally Rivas v. Bowling Green Associates, L.P.* No. 13-cv-7812, , at *4-5 (S.D.N.Y. July 24, 2014)). As such, for Appellee ~~Defendant~~ to remove to Federal Court, for the sole purpose of attempting dismissal or procuring improper summary judgment, would

12

be tantamount to bad faith. Further, there is no question that this court can hear the related state claims as well based on Supplemental jurisdiction. Supplemental jurisdiction is the authority of United States federal courts to hear additional claims substantially related to the original claim even though the court would lack the subject-matter jurisdiction to hear the additional claims independently. *28 U.S.C. § 1367*. As such, there is no reason to grant summary judgment based on jurisdictional reasons for either party.

As stated by Appellee, ~~Defendant~~ it is axiomatic that the United States and its agencies and officers are immune from suit unless they have consented to be sued. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). *In re Epps*, 110 B.R. 691 (E.D. Pa. 1990) (sovereign immunity waived under National Housing Act authorizing HUD to "sue and be sued" in carrying out certain provisions of the Act). Such "sue and be sued" statutes waive sovereign immunity only of particular

13

agencies, not the United States generally. *See Lomas & Nettleton Co. v. Pierce*, <u>636 F.2d 971, 972-73</u> (5th Cir. 1981); *Indus. Indem., Inc. v. Landrieu*, <u>615 F.2d 644, 646</u> (5th Cir. 1980). If the judgment sought by the Appellant would "expend itself on the public Treasury," the suit is in reality against the United States regardless of whether the complaint names only Federal agencies or officials. *Dugan v. Rank*, <u>372 U.S. 609, 620</u> (1963) (quoting *Land v. Dollar*, <u>330 U.S. 731</u>, 738 (1947)); *see also FHA V. Burr*, <u>309 U.S. 242</u>, 250-51 (1940) (garnishment action against Federal agency permitted only to the extent it had funds outside the Treasury); *Presidential Gardens Assocs. v. United States ex rel. Sec'y of HUD*, <u>175 F.3d 132, 141</u> (2d Cir. 1999) (waiver of HUD's immunity limited to funds under control of HUD, does not reach general Treasury funds). Finally, in the case of "sue-and-be-sued" agencies, one can argue that, although such governmental units may have independent litigating authority, the Bankruptcy Code, § 106, places limits upon the jurisdiction of the

14

bankruptcy courts over any governmental unit. *Cf. Aetna Cas. & Sur. Co. v. United States*, 655 F.2d 1047 (Ct. Cl. 1981) (although HUD might be suable in other courts upon certain causes of action, Tucker Act places limits upon Court of Claims' jurisdiction over them).

In this case, by transferring the interest in the underlying debt for the sole purpose of attempting to collect on that debt, that was an affirmative action that effectively waived sovereign immunity. Even though it is admitted that the SBA transferred the debt, they were still responsible for the apparent "deficiency" and the initiation of the transfer. As such, even the SBA was not the primary party to begin the debt collection process, it was still their actions that permitted it to proceed. As such, they can be sued for their actions that left to the collection action, even if they were not directly the party doing so. Specifically, the SBA **can** be held accountable for their actions under the FCRA.

In *Kent v. TransUnion*, Appellant ~~plaintiff~~ Rowdy Kent sued multiple consumer reporting agencies and the United States Defense Finance and Accounting Services for alleged violations of the Fair Credit Reporting Act. See Kent v. Trans Union, LLC, docket number 16-322 (2017) DFAS moved to dismiss Kent's claims, arguing that it possesses sovereign immunity from claims under the FCRA. On August 25, 2017 the District Court for the Northern District of Texas rejected DFAS's contention, finding that Congress had waived sovereign immunity for claims under the FCRA. As such, because the actions taken by the SBA led to damage to Appellant ~~Plaintiff~~ Conboy's credit, that is enough to keep them in the case for the FCRA violation and related stated claims as well as not granting summary judgment.

Further, there is a relevant exception to the sovereign immunity waiver. If the Appellant ~~plaintiff~~ seeks less than $10,000 in damages, the federal district courts have concurrent jurisdiction with the United States Court of Federal Claims based on 28 U.S.C. § 1346, also

16

known as the "Little Tucker Act". The current version gives concurrent jurisdiction to the Court of Federal Claims and the District Courts "for the recovery of … any sum alleged to have been excessive or in any manner wrongfully collected … and for claims below $10,000" See 28 U.S.C. § 1346(a)(2). For this case, Appellants [Plaintiffs] are willing to limit their claim against the SBA to below $10,000.00 for the damage they caused through the transfer they effectuated as well as the damage to credit, particularly if the SBA agrees to repair said damage. As such, even if the FDCPA cannot be brought against Appellee [Defendant] SBA, it can still proceed against the other Appellees [Defendants] and as such, summary judgment should be granted to the claim fully. As such, the SBA essentially admitted and agreed that the other claims, as long as they are each limited to $10,000.00 can proceed. The only other "argument" is a failure to exhaust "administrative remedies" but in none of the pleadings is it stated what remedies should have been pursued

17

before filing this suit. As such, this argument should be considered a red herring at most, and can be denied.

### c. APPELLEE ~~III.~~ SED COGA AND CBE GROUP'S MOTION FOR ~~DEFENDANT~~ SUMMARY JUDGMENT SHOULD HAVE BEEN DENIED ~~MUST BE~~

Seda Cog and CBE Group rely primarily on the assertion they "transferred their rights away" in 2006. This simply is not accurate, as a modification was signed with them in 2013 (see Exhibit D) and they were contacting Appellant ~~Plaintiff~~ as late as 2015. As such, their implicit statute of limitations argument against the claims against should have been ~~them must be~~ denied.

Several of the above arguments can be applied to Seda Cog as well and are incorporated by reference. As in the *Alfaro* case, the Appellants ~~Plaintiffs~~ are "*not inviting the district court to review and reject any state judgment under this cause of action.*" *Alfaro V. Wells Fargo N.A., d/b/a America's Servicing Company*, Civil Action No. 16-7950 (DNJ 2017). The reason for this is because the actionable offenses that the statute would have applied occurred, as Appellees ~~Defendants~~ admitted well within the two

18

years statute. The actions that occurred by ~~Appellee Defendant~~ previously clearly show the scheme at issue here. Even though they try to claim they had no interest since 2006, that is simply not accurate. As such, they must remain as ~~Appellees Defendants~~ in this action for all of the damages caused to ~~Appellants, Plaintiffs~~

As to the breach of contract, unjust enrichment and the other state claims, the statute that applies is the a four year statute, rather than a two year statue, as per either 42 Pa. Consol. Stat. § 5525(7), (8); 42 Pa. Consol. Stat. § 5529 for written contracts or  42 Pa. Consol. Stat. § 5525(3) for oral contracts. These relate to the modification that was offered and which payments were made on it.

Additionally, there should be no question that ~~Appellee Defendant~~ Seda Cog can be considered a Debt Collector. ~~Appellee Defendant~~ squarely falls into the definition of a "debt collector" because they certainly qualify as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which

19

is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). Further, a party is also a "debt collector" if the obligation is already in default when it is assigned. Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355, 358, fn. 2 (3d Cir. 2015). In this case, by either standard, Appellee ~~Defendant~~ would be considered a debt collector, as through their actions there is now an attempt to collect the underlying debt in question. Finally whether or not a party was a "debt collector" is a material fact for a fact finder to decide. A mere allegation a part was not is insufficient and since Appellees ~~Defendants~~ attached no actual evidence to this matter, the argument should be deemed moot.

## ~~IV.    THE MOTIONS FOR SANCTIONS SHOULD BE DENIED~~

[This section from the District Court brief does not appear in the appellate brief.]

## VIII.    CONCLUSION

~~V.~~

For the foregoing reasons, Appellant ~~Defendants~~ respectfully requests that this Court remand this matter to the ~~deny Defendants' motions in~~ District Court and order a default judgment be entered. ~~full.~~

20

[Original signature block and date omitted.]

Respectfully submitted,


Dated: August 17, 2020          ___/s/ Joshua Thomas___
                                Joshua L. Thomas and Assoc.
                                Joshua Thomas Esq.
                                Supreme Court ID No. 312476
                                225 Wilmington-West Chester
                                Pike
                                Suite 200
                                Chadds Ford, PA 19317
                                Phone: (215) 806-1733
                                Email: JoshuaLThomas@gmail.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 4612 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010, in 14-point Courier New.

August 17, 2020                    /s/ Joshua Thomas
                                       Joshua Thomas, Esq.

## CERTIFICATE

I, Joshua L. Thomas, Esquire, hereby certify that to the best of my knowledge, the hard copy brief and the electronic version submitted in this matter are identical.

I certify that I have checked these filings and have been scanned for viruses by virus protection program, AVG Anti- Virus, and they are free from any viruses.

/s/ Joshua Thomas
Joshua Thomas, Esq.

23

**CERTIFICATE OF SERVICE**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**


I, Joshua L. Thomas, Esquire, hereby certify that

a true and correct copy of Appellant's Brief was

served via ECF and/or regular mail upon all parties.


/s/ Joshua Thomas
Joshua Thomas, Esq.

24

# APPENDIX C

**A redline copy of Appellants' opposition to Rule 38 damages compared to their District Court brief**

No. 20-1726

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

DESMOND CONBOY and

BRENDAN GILSENAN

v.

CBE GROUP, SEDA COG, FIRST NATIONAL BANK S/B/M METRO BANK
AND U.S. SMALL BUSINESS ADMINISTRATION

DESMOND CONBOY and
BRENDAN GILSENAN,

*Appellant*

**On Appeal from the U.S. District Court
for the MIDDLE DISTRICT OF PENNSYLVANIA
Civil Action No.        3:18-CV-00224**

**APPELLANT'S OPPOSITION TO
DEFENDANTS' MOTION FOR SANCTIONS**

Attorney for Appellants

Joshua L. Thomas & Associates

Joshua Thomas Esq.

Supreme Court ID No. 312476

225 Wilmington-West Chester Pike Suite 200

Chadds Ford, PA 19317

Phone: (215) 806-1733

Fax: (888) 314-8910

Email: JoshuaLThomas@gmail.com

[Front matter replaced District Court brief's caption.]

## STATEMENT OF FACTS

Appellants sold the property, known as 310 North Second Street, Harrisburg PA 18360 ~~Plaintiffs~~ by on February 17, 2016. As part of that sale, there were two loans paid off to First National ~~(See Exhibit A – HUD1)~~ [+] ~~.~~ Bank S/B/M Metro Bank, the first mortgage of $432,113.49 and the second mortgage for $45,340.43. Defendant SBA was responsible for backing the second mortgage that was paid off the $45,340.43. Defendant SBA signed off and agreed to permit this sale to take place. As such, there was an alleged deficiency to the SBA of $276,315.61. This information was, in fact, sent for the first time to Appellants on September 3, 2016, which was 6 months and 18 days after the ~~Plaintiffs~~ sale. This was beyond the 6 month cutoff for a deficiency judgment on a mortgage to be pursued. ~~(See Exhibit B).~~ After that time, Defendant SBA transferred the debt improperly to Defendant CBE Group. As of October 19, 2017, Defendant CBE has not only made many collection attempts in writing, but added on interested and fees so the current debt balance is now allegedly at $374,258.64. At no ~~(see Exhibit C).~~ time was a lawsuit brought or a judgment received during the 6 month period after the sale of the property took place. Defendant CBE has been informed that their collection efforts are not legal, yet they have continued to pursue those efforts despite this knowledge. Further, on or around February 9, 2018, Defendant SBA reported an outstanding balance to the Credit Bureaus for Mr. Conboy. This report stated that the account was allegedly opened on April 15, 2005, the "high balance" was for $594,000, there was a balance of 271,799 and the last time Mr. Conboy allegedly made a payment was October 11, 2017. Further, it had a status of "charged off". This report was done solely to damage Mr. Conboy's credit and in retaliation for the filing of this suit, as there had never been a report previously. There was no reasonable or legal reason for this report, and it was done for completely improper purposes, with the express intent to damage Mr.

[+] ~~All exhibits incorporated by reference from prior pleading and complaint for sake of brevity.~~

2

Conboy, his ability to receive credit and to defame him for anyone else who would potentially attempt to lend him money and see such a derogatory report.

Further, there is no question that Seda Cog had an interest in this matter. Additionally, they were communicating with Appellant ~~Plaintiff~~ as late as 2015. There is no question they still had an

(See Exhibit D – modification).

Some of the people who communicated with Plaintiff from Seda Cog were X and B.

interest in this matter and were actively attempting to collect on this debt. As such, they belong as a party to this matter as well.

## LEGAL ARGUMENT

### ~~I. BOTH DEFENDANTS' MOTIONS FAIL TO SHOW THEY ARE ENTITLED TO SUMMARY JUDGMENT~~

[The first three sections from the District Court brief do not appear in this brief.]

### ~~IV. THE MOTIONS FOR SANCTIONS SHOULD BE DENIED~~

Appellees' ~~Defendants'~~ motions utterly lacks merit and was filed for an improper purpose, and its denial should be compounded by a corresponding levy of sanctions and costs against Appellees. ~~Defendants.~~ Prior motions were filed by the same parties on July 10, 2019 for essentially the same purpose. They were denied by the court. This current motion, states essentially the exact same arguments, after they have already lost once. If anything, they should be stopped by res judicata from attempting the exact same motions. Additionally, appellees ~~Defendants~~ have used both the threat and the filing of the motion, not as a means to filter a frivolous claim but as a bullying tactic intended to intimidate Plaintiffs into withdrawing legitimate claims This misuse of Rule 11 is in and of itself sanctionable. Indeed, the Advisory Committee notes point out that Rule 11 should not be used "to emphasize the merits of a party's position, to exact an unjust settlement, [or] to intimidate an adversary into withdrawing contentions that are fairly debatable." *See Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida*, 827 F.2d 1454, 1458 (11th Cir. 1987) (affirming the denial of sanctions where the issues were fairly debatable and not easily resolved, and there was no clear binding precedent).

The standard under Rule 11 is "stringent" because sanctions "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes,

2) tend to spawn satellite litigation counter-productive to efficient disposition of cases, and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). While the focus of Rule 11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988) ("Rather than misusing scarce resources, [the] timely filing and disposition of Rule 11 motions should conserve judicial energies.").

Appellees' motions fail not only for its lack of merit, but it also violates the ethical ~~Defendants~~ underpinnings of Rule 11. Rule 11 imposes a duty on the party seeking sanctions to be circumspect in pursuing such a drastic remedy and to not to use the device for an improper purpose lest it may discourage expansion of the law through creative legal theories. *See Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010) (Rule 11 "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.")(citations omitted). Sanctions are a drastic remedy reserved for only the most extraordinary circumstances. *See, Park v. Seoul Broad. Sys. Co.*, 2008 U.S. Dist. LEXIS 17277, at *1 (S.D.N.Y. Mar. 6, 2008). Whether a claim can survive on the merits is wholly distinct from whether that claim is frivolous. *See Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007)("'When divining the point at which an argument turns from merely losing to losing and sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'"). Once again, similar claims were already filed, and denied, by the lower court. If appellees wanted to appeal their denial, they could have, but failed to do so. As such, the new

4

motions, for ostensibly the same reason, but being dressed up as an improper appeal, should be denied, and a sanction should be levied against them.

## I. ~~V.~~ CONCLUSION

For the foregoing reasons, Appellants ~~Defendants~~ respectfully request that this Court deny Appellants' ~~Defendants~~ motions in full.

_/s/ Joshua Thomas, Esq._
Joshua Thomas, Esq.
*Attorneys for Plaintiffs*

Dated: October 19, 2020
~~September 30, 2019~~